Good morning, Your Honors. Ina Lipkin on behalf of the petitioner. This is a petition for review of the decision of the Board of Immigration Appeals and the central issue here is the petitioner's credibility. In particular, his testimony before the court in comparison to some testimony provided to the asylum officer during the credible fear process while he was detained by DHS. The issue here is was a minor omission during the course of the asylum interview testimony a sufficient basis upon which to rest in adverse credibility finding and petitioner contends that it was not. As argued in the brief, he plausibly explained that the asylum officer did not give him the opportunity to further elucidate what the police told him when he attempted to file a complaint against the Badal party members who had attacked him. The Board of Appeals failed to take into consideration the petitioner's arguments on appeal by which he explained that the asylum office is a quasi-judicial process and does not afford the same safeguards as a regular administrative hearing before the IJ. For example, even though the asylum officer towards the end of an interview may make a blanket statement, did I ask you everything or did you tell me everything you wanted to tell me, that does not put an alert an applicant in detention unfamiliar with the process that he must explore or flesh out more details in his claim when not asked originally. Therefore, the basis for that adverse credibility finding on that ground is insufficient. Secondly, there was an issue of sufficiency of detail in the petitioner's corroborating documents, in particular his father's affidavit. And here the board clearly erred in affirming the immigration judge's adverse finding because even the judge found that the father's letter did not include any evidence that the petitioner had fled India. Again, the petitioner doesn't have control over the production of documents and the fact that the father did mention continued police problems was sufficient to corroborate his claim. Well it could be, but the question is whether it really has to be, right? We have to be compelled. So on this point in particular, I think the father's statement is the police and workers of the party, that's my summary of the party, are still searching out, quote, here and there to conduct inquiries about him, right? As opposed to coming to search at the parent's home. Well that could be interpreted a multitude of ways. It could be they came to the home and searched within the home here and there, or it could be they went out into the village and searched here and there. But the fact that the father mentioned their continuing interest, that point does corroborate the petitioner's claim regarding his well-founded fear. I think that's right. And so the question is, what I was trying to get at is, I think your argument boils down to this evidence being capable of interpretation two different ways. That is our position. And it was thus insufficient for the immigration judge to point to that alleged inconsistency, to find that, number one, the claim, or two, that the documentary evidence somehow contradicted the claim. That is not clear from the record. All right. Are there any questions from the panel? No, it looks like there are not. So we'll hear from, are you ready to pass? I'll reserve. Okay, you'll reserve your time. That's fine. You've got about half your time left. We'll hear from the government, please. Thank you. Good morning, your honors. May it please the court, Ann Poe Donahue from the U.S. Department of Justice on behalf of Attorney General Merrick Garland. This court should deny this petition because the immigration judge identified specific and cogent reasons why he found Mr. Singh's testimony not to be credible. A review of the totality of the circumstances in the record before you shows that substantial evidence supports those conclusions. The immigration judge found Mr. Singh's testimony not to be credible in two significant respects. The first was Mr. Singh's testimony that after the alleged assault by opposition party members, he attempted to report the assault to the police and the police refused to take the report. And in addition, threatened that if he returned, they would beat him, file a false case against him and lock him up in jail. The immigration judge noted that Mr. Singh did not mention any of these threats at his credible fear interview with the asylum officer. The credible fear packet was entered as an exhibit and was properly before the immigration judge for his consideration, including the contemporaneous notes of the asylum officer taken during the credible fear interview. Those documents, and in particular pages 539 and 540 of the administrative record, show that when Mr. Singh had that interview, he stated only that he was assaulted by party members and that the police refused to take his report. When asked about this by the immigration judge at the removal hearing, Mr. Singh claimed that the asylum officer did not ask him questions about whether he'd been threatened by police and also claimed that he tried to tell the asylum officer about the threats, but the asylum officer cut him off. The immigration judge reviewed the asylum officer's notes and rejected Mr. Singh's claims, which is supported by the record. The record shows, again on pages 539 and 540, that the asylum officer asked Mr. Singh several open-ended questions, including if there was any other reason, aside from the party assaults, that Mr. Singh would be harmed if he returned, if he had been harmed by the government, including the police, if he was afraid of the government, including the police, if there was any reason why the police wouldn't help or protect him. Mr. Singh had ample opportunity in response to those questions to raise police threats. The immigration judge also noted that at the end of the interview, the asylum officer recited a summary to Mr. Singh of what they had discussed and asked Mr. Singh if he wanted to add anything. And at that time, Mr. Singh said, no, he did not. Counsel, do you think that that issue that you're describing is enough to support the agency's decision? I guess stated another way, the agency relied also on this discrepancy about what the father didn't include in his affidavit or letter. Yes. So if we expected that, you think this is enough? I didn't hear your question. Hang on one second. I just didn't hear Judge Forrest's question. I'm trying to get if the government thinks that the issue that she's describing right now about the discrepancy between the interview with the asylum officer and what was said at the hearing versus what the father said in his declaration. If we set aside the father issue, is there enough to support this adverse? Yes. Yes, your honor. In this case, on these facts, I would suggest that there is I would suggest contrary to what Mr. Singh is arguing, this is not a minor omission. This was a significant omission. And the credible fear interview was only five months after Mr. Singh left India. He testified that he was beaten by opposition party members and he did not say anything about being threatened by the police, which I would suggest is a major omission based on the claims that he's that he was making then and the claims that he made later. And I would also suggest that this that this omission of the threats by the police is inconsistent with his testimony at the immigration hearing, not only because it is inconsistent with him, with him saying at the hearing that he was threatened when he made no mention of the threats, but also his claim that he feared the police at the immigration hearing, which was, I would suggest, inconsistent with what he told the asylum officer. So in this case, there is more. But if your honors were only looking at that omission and inconsistency, I would suggest that it is enough. But as your honors pointed out, Mr. Singh also offered into evidence a statement from his father to corroborate his claims. And the father stated that he did accompany Mr. Singh to the police to make the report and that the police refused to take the report and did threaten to lock him up and file a false charge. But the father's the father's statement does not include any mention of threats made by the police, which I would suggest, again, is a significant omission. The immigration judge pointed out this discrepancy to Mr. Singh and asked him about it. And Mr. Singh's response was simply that his father is not an educated man, which the immigration judge did not find to be a satisfactory explanation for the absence of any mention of police threats in the father's affidavit. On those bases, on the totality of those circumstances, the immigration judge found Mr. Singh's testimony in that regard not to be credible. The immigration judge also found Mr. Singh's testimony to be not credible in a second key respect, which was Mr. Singh's testimony that since he left India, the police have come to his house, to the family home several times with opposition party members looking to arrest him. Mr. Singh testified that he's in regular contact with his father and that his father reported these facts to him. However, in the father's statement, the father stated only that the police were searching here and there to make inquiries about Mr. Singh. The father said nothing about the police coming to the family home and said nothing about the police intending to arrest Mr. Singh. For these reasons, the judge, the immigration judge did not find the Mr. Singh's testimony in this regard to be credible. In addition, the immigration judge also found it implausible Mr. Singh's claim that the police were looking to arrest him. And that was based, the judge's conclusion of implausibility was based on Mr. Singh's own testimony. Mr. Singh testified that it is not illegal to be a member of the man party. He testified that he was merely a low-level member of the party. Mr. Singh admitted that he had not been harmed or arrested or harassed at any time by the police. He also stated that when he tried to make the report, he gave the police his identification. Thus, the police knew his name and his address. Mr. Singh continued to remain in India for five months after that initial interaction with the police. And the police did not arrest him, harass him, detain him. They did nothing to him. And on all of those bases taken together, the immigration judge found Mr. Singh's claim that the police would be spending time and resources looking for him to arrest him to be implausible. The Mr. Singh has cited several cases to this court in which this court has reversed adverse credibility findings by immigration judges in support of his claims. I would suggest to this court that the instant case is different from the cases on which Mr. Singh relies. The cases on which he relies fall into essentially three categories, where the immigration judges in those cases either did not identify the discrepancies that they found compelling on the issue of credibility and give those petitioners a chance to explain the discrepancies, or those immigration judges did not consider the explanations offered by the petitioners, or the immigration judges in those cases cherry-picked facts and ignored evidence that was favorable to the petitioners. I would suggest that that is not the case here. Here, the immigration judge identified every discrepancy that he was looking at for Mr. Singh, gave Mr. Singh an opportunity to explain them away, considered Mr. Singh's explanations in comparison to the balance of the entire record before him, which included Mr. Singh's previous statements and the corroboration offered by Mr. Singh in support of his claims. And the immigration judge rejected Mr. Singh's explanations as unpersuasive. I would suggest to this court that the immigration judge was in the best position to make that to support, to meet his burden that he qualified for relief. The immigration judge was correct to deny his requests. The facts here do not compel a contrary conclusion to the immigration judge's findings. If there are no further questions. It doesn't look like there are. Thank you. Okay, thank you. This court should deny the petition. I thank you for your time and for allowing me to appear remotely. You bet. We'll hear from Petitioners' Counsel again. You have almost six minutes. Thank you, Your Honor. In response to the government's contention that the respondent failed to establish a well-founded fear of persecution because he lived for five months in India unharmed, glossed over his credible testimony indicating that he lived five months in a state of virtual hiding with his grandparents. And that's why he was not found. Had he come out of hiding, it is presumed that he would be found based on his credible testimony. He further testified that he fears to be located by the Bidal party members, the BJP party members, or the police because if he continued with his pro-mon political activities, he would again become a target for harm simply because those ruling parties and the police oppose the Mon party's main tenet of advocacy for a separate Sikh state to be called Khalistan. So it is irrelevant whether he is a low-level party member or a high-level party member. The fact that he supports a party which is viewed as having a pro-cessationist platform would engender harm to him. Counsel, following up on something that the government was arguing, you know, why isn't the incident, you know, the closest in time statement that he made was to the asylum officer and then he leaves out these key details about police threats. Why isn't that compelling? Again, because of the nature of the asylum interview process, it does not have the same safeguards as administrative court hearings. So what safeguards would those be, that he doesn't have a lawyer? That he doesn't have a lawyer, that he is not made aware that in the asylum context it is desirable for him to flesh out his claim with as many details as possible. In his position, he is detained. He has never been in such a judicial process before. He is unaware that it is not enough to say that I had come to the police for help and they refused. We don't have a verbatim record of every question and every response given during the credible fear interview. Plus, the government didn't bring forth the asylum officer to be available for cross-examination to allow the petitioner and his counsel to question the... But the law doesn't require that, does it? I'm not aware that we're required to go through that sort of a process in order to assess inconsistencies between that level of the proceedings and then later hearings. The government's burden is to have the asylum officer available for cross-examination. If the asylum officer is not made available for cross-examination, then the judge can find that the petitioner was not afforded the opportunity to address the evidence put against him. Do you make that argument in this case? I know that we argued regarding the safeguards in the asylum process. If I could just have a moment to look at the case law that we cited. You have two minutes. You can use it as you wish. Thank you. I'm going to do that. Thank you. We did cite Singh v. Gonzalez, 403 F. 3rd, 1081, 9th Circuit, 2005, on page 22 of our opening brief. In that case, the 9th Circuit court found that the discrepancies between some of the testimony at the asylum office versus the in-court testimony was not a sufficient basis for an adverse credibility finding. We didn't cite, in particular, a case stating that the asylum officer has to be available for cross-examination. But I think in the body of that case, there is discussion regarding the lack of safeguards, as I had mentioned earlier. Nevertheless, this kind of omission does not rise to the level to find sufficient evidence for an adverse credibility finding, given that the petitioner shored up any deficiency or omission with his corroborating witness statements, including from his father, which was sufficient to show that he continues to have a well-founded fear of persecution, not just from the ruling. Counsel, you're significantly over time. I just have one question for you, so I want to get it out if I can't, to give you an opportunity to respond. You've used all of your time and then some. But as far as this omission is concerned, my preoccupation is that it seems to me that it's more than an omission. It seems to me that it's quite inconsistent with what he's now saying, which is expressing a fear of the police. What he said is that the police ignored me, so I did not bother to report what happened to me the next time. That seems very inconsistent, qualitatively different than saying that the police threatened me in the way that's just been described. So would you just like to take a few moments here to respond to that? Sure, Your Honor. Well, the fact that the police did ignore his request for protection and to investigate the attack on him is truly one of the reasons why he did not return. The second reason was that they affirmatively harmed him, so that is not necessarily an inconsistency. That's yet another reason why he did not go to the police. Okay. Thank you. Are there any other questions? It doesn't look like there are. Thank you both so very much for your arguments. They're very helpful. We'll take this matter under advisement and go on to the next argument on the calendar.
judges: CHRISTEN, LEE, FORREST